IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EVELYN GENTRY, | ) |
| | ) |
| Plaintiff, | ) Case No. 16 C 7044 |
| v. | ) |
| | ) Judge Robert W. Gettleman |
| ALLIED TUBE & CONDUIT CORP. and | ) |
| ATKORE INTERNATIONAL, INC., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Pro se plaintiff Evelyn Gentry brought a three-count second amended complaint against Allied Tube & Conduit Corporation and Atkore International, Inc. ("defendant")[1] alleging disparate treatment and failure to promote in violation of the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 et seq. (Count I), disparate treatment resulting in termination in violation of the IHRA and Title VII of the Civil Rights Act of 1964 as amended ("Title VII"), 42 U.S.C. § 2000 et seq. (Count II), and retaliation resulting in termination in violation of the IHRA and Title VII (Count III). Defendant has moved for summary judgment on all counts. For the reasons described below, defendant's motion is granted.

---

[1] Atkore is the parent company of the company for which plaintiff worked, Allied. For simplicity's sake, the court will refer to them jointly as defendant.

# BACKGROUND[2]

Plaintiff, an African-American woman, began working for defendant as a Senior Human Resources Generalist ("SHRG") in July 2013. At some point in June 2014 plaintiff was offered a project management position, which she accepted. Defendant's Vice President of Global Human Resources, Kevin Fitzpatrick ("Fitzpatrick") and its then-Director of Human Resources told plaintiff that she would maintain the project management role exclusively until at least February 1, 2015. Through October and November 2014, defendant's new Director of Human Resources, Molly Kieres ("Kieres"), urged Fitzpatrick and defendant's Vice President of Human Resources, Steve Bishara ("Bishara"), to assign plaintiff SHRG duties in addition to her project management role. Fitzpatrick and Bishara attempted to do so, and plaintiff repeatedly refused to take on SHRG duties without additional compensation. Fitzpatrick and Bishara denied plaintiff additional compensation, and told her that she would be fired if she refused to perform the requested duties. Plaintiff persisted, demanding either additional compensation or a return to her SHRG position. Plaintiff was returned to her SHRG role in December 2014.

No later than January 2015 plaintiff experienced what she describes as an "attitude shift," which caused her to view her interactions with colleagues through a negative, pessimistic filter.[3] Plaintiff concedes that this affected her interactions with her colleagues, specifically Bishara, Fitzpatrick, and Kieres, at whom she directed her frustrations. On March 10, 2015, Kieres gave plaintiff her 2014 performance appraisal. Kieres noted that, as of December of that year, plaintiff had become disengaged and her behavior had declined sharply. Kieres rated plaintiff "below

---

[2] The following facts are, unless otherwise specified, undisputed and taken from the parties' Local Rule 56.1 statements, responses, and attached exhibits.
[3] Plaintiff testified in her deposition that she had developed a negative pessimistic filter as of January 2015. In her response to defendant's Rule 56.1 statement plaintiff asserts that she developed this filter earlier, in October 2014.

expectations" in the areas of teamwork, respect, customer focus, and "tough minded." Additionally, Kieres commented that plaintiff was, at times, dismissive in a way that could be construed as disrespectful, and argumentative in her communications and interactions with all levels of the organization. Kieres further commented that plaintiff needed to work on being less defensive when receiving feedback and more open to what is being said. Plaintiff refused to sign the appraisal and, instead, submitted a rebuttal alleging that the appraisal demonstrated Kieres' bias against plaintiff's personality and communication style.

In March 2015 plaintiff spoke with Bishara twice regarding what she perceived as race discrimination, specifically that certain non-Caucasian employees were being paid less than their Caucasian peers for doing the same job with roughly the same experience. At some point prior to those conversations, plaintiff expressed concerns to Kieres and Bishara that certain employees had been placed on performance improvement plans ("PIPs"), and, after all of these employees failed to meet the objectives in their respective PIPs, only a male Caucasian employee was not terminated. No later than April 4, 2015, plaintiff learned that Bishara and Fitzpatrick promoted one of her Caucasian colleagues, which resulted in a pay raise. No later than September 2015, plaintiff learned that another Caucasian colleague had also been promoted and given a pay raise in December 2014. Neither of the positions to which plaintiff's colleagues were promoted was posted for solicitation of applications.

Meanwhile, plaintiff continued to receive counseling, both verbal and written, regarding her need to improve her interpersonal skills. In December 2015 Kieres warned plaintiff that she would be disciplined if her behavior continued. It did. On May 20, 2016, Kieres issued plaintiff a written warning concerning email exchanges in which plaintiff used a tone that Kieres deemed inappropriate and evidencing poor judgment. The written warning informed plaintiff that her

conduct violated defendant's Values and Guide to Ethical Conduct, and that she was to conduct herself in a professional manner and handle disagreements respectfully, or face further discipline. Plaintiff refused to sign the warning. Then, in June 2016, plaintiff participated in interview certification training with Bishara and Fitzpatrick. As part of the training, plaintiff was asked to craft a story about her experience working for defendant that she could share with job candidates. Plaintiff responded that her defining story was that she would be filing a lawsuit against the company in the coming week. Plaintiff was asked to craft a positive story that she could present to Bishara and Fitzpatrick in the future. She did not.

Plaintiff received her 2016 mid-year performance appraisal on November 18, 2016, and was again rated "below expectations" in several categories such as teamwork, respect, and engagement. Plaintiff received a PIP at the same time. The PIP enumerated a number of incidents between December 3, 2015, and October 14, 2016, in which plaintiff was perceived by her colleagues as unprofessional, disrespectful, or condescending, in violation of defendant's "Core Values." The PIP also provided goals for plaintiff to reach, including not receiving complaints from co-workers about her tone and attitude. Plaintiff refused to sign both her 2016 performance appraisal and the PIP. Plaintiff also repeatedly refused to participate in the PIP, although she was given the opportunity to think it over for two weeks. When plaintiff was informed that she would be terminated if she did not participate in the PIP, her response was: "Well, you'll just have to fire me." So defendant did.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 27, 2016, alleging that her termination was discriminatory and retaliatory. She received a right to sue letter from the EEOC January 31, 2017. This was not plaintiff's first experience with the EEOC. On September 25, 2015, plaintiff filed a Charge of

4

Discrimination with the EEOC alleging disparate treatment due to race. Plaintiff amended that Charge on February 5, 2016, adding that, as part of her disparate treatment, she received lower merit increases. She received a right to sue letter on that Charge April 7, 2016, and filed this lawsuit July 7, 2016.

## DISCUSSION

**I.      Legal Standard**

Summary judgment is appropriate when the moving papers and affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the nonmovant must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the evidence as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. Green v. Carlson, 826 F.2d 647, 651 (7th Cir. 1987).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party must, however, "do more than simply show that there is some metaphysical doubt about the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient, there must be some evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

**II.     Analysis**

5

Under Title VII employers cannot discriminate against employees due to "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Generally, a plaintiff making an employment discrimination claim can defeat summary judgment in one of two ways. First, plaintiff can point to sufficient evidence in the record, whether called direct, indirect or circumstantial, from which a reasonable jury could conclude that defendant fired her because of her race or national origin (the direct method). This is the standard way to defeat a motion for summary judgment, as recently reiterated by the Seventh Circuit in Ortiz v. Werner Enterprises, Inc., 834 F.3d 760, 764 (7th Cir. 2016) (overruling the use of a "convincing mosaic" test.). Under this test, "evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself - or whether just the 'direct' evidence does so, or the 'indirect' evidence. . . . Relevant evidence must be considered and irrelevant evidence discarded, but no evidence should be treated differently from other evidence because it can be labeled 'direct' or 'indirect.'" Id. at 765.

As Ortiz makes clear, however, id. at 766, a plaintiff may also choose to defend a summary judgment motion using the burden-shifting framework created by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) (the indirect method). Under the indirect method of proof, it is the plaintiff's burden to establish a prima facie case of discrimination. Naficy v. Illinois Dep't of Human Servs., 697 F.3d 504, 511 (7th Cir. 2012). If the plaintiff is able to establish a prima facie case, the burden then shifts to the plaintiff's employer to "introduce a legitimate, nondiscriminatory reason for the employment action." Id. A plaintiff can then avoid summary judgment by showing the employer's reason for the employment action "is pretextual." Id. at 511-512. Plaintiff does not specify the method through which she attempts to prove her discrimination claims, but does spend much of her brief arguing that pretext can be

6

inferred from defendant's actions. Accordingly, the court analyzes her claim under the burden-shifting method set forth in McDonnel Douglas.

### A. Count I: Failure to Promote

Plaintiff alleges that defendant treated her disparately, in violation of Title VII and the IHRA, by promoting two white employees without giving plaintiff the opportunity to apply for the positions to which the white employees were promoted.[4] Defendant responds that these were "in role" promotions, meaning that the promoted employees were simply given new titles, and salaries, because they were already performing the duties of a higher-level position. Accordingly, no opening existed, and none was posted.

To establish a prima facie case of employment discrimination based on failure to promote under the indirect method of proof plaintiff must show: "(1) [s]he was a member of a protected class; (2) [s]he applied for an open position for which [s]he was qualified; (3) [s]he did not receive the position; and (4) those who were hired were not in the protected class and had similar or lesser qualifications." Whitfield v. Int'l Truck & Engine Corp., 755 F.3d 438, 444 (7th Cir. 2014). Plaintiff cannot establish a prima facie case for at least two reasons.

First, it is undisputed that there never was an open position to which plaintiff could have applied. Accordingly, "[plaintiff] cannot prove a prima facie case regarding [either position] because she never applied for the positions." Riley v. Elkhart Cmty. Sch., 829 F.3d 886, 892 (7th

---

[4] Defendants argue that plaintiff does not assert a Title VII claim under Count I because she did not include it in her Second Amended Complaint. Defendants are correct, to an extent. Count I of the Second Amended Complaint asserts an IHRA claim only, but includes a footnote regarding plaintiff's Title VII claim, asserted in plaintiff's amended complaint, that she mistakenly believed was still pending before the court. Because the court construes the submissions of pro se litigants liberally, it incorporates her Title VII claim into the Second Amended Complaint. See Alvarado v. Litscher, 267 F.3d 648, 651 (7th Cir. 2001) ("Allegations of a pro se complaint are held 'to less stringent standards than formal pleadings drafted by lawyers.'") (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).

Cir. 2016), cert. denied, 137 S. Ct. 1328, 197 L. Ed. 2d 517 (2017); see also Johnson v. Gen. Bd. of Pension & Health Benefits of United Methodist Church, 733 F.3d 722, 728 (7th Cir. 2013) (summary judgment for defendant on Title VII failure to promote claim appropriate where plaintiff never applied for promotion). Plaintiff argues that the court should infer pretext from the fact that she could not apply for the positions because they were not posted, in violation of defendant's Internal Recruiting and Job Posting Policy. It is undisputed, however, that the policy contains an exception to the posting requirement for positions "deemed ineligible by the Vice President, Global Human Resources or his or her designee." Doc. 88 at ¶26. Given this exception, Fitzpatrick, the Vice President of Global Human Resources, was entitled to give "in role" promotions to employees who were already performing the duties of a higher-level position. Accordingly, plaintiff's argument that the policy does not contain an exception for "in role" promotions is irrelevant, and Fitzpatrick's decision to award such promotions is not evidence of pretext. "Simply put, pretext is a lie – a phony reason for some action." Riley, 829 F.3d at 894. Plaintiff does not dispute that the Caucasian employees were qualified for the promotions. Instead, she points out that she believes she was also qualified. Assuming plaintiff is correct does nothing to salvage her failure to promote claim, which fails as a matter of law because she neither applied for a position, nor was she rejected. Consequently, plaintiff cannot satisfy the second and third elements of a failure to promote claim. Whitfield, 755 F.3d at 444.

Second, even if the positions were posted and plaintiff had applied for them and been rejected, her claim would still fail. Plaintiff does not dispute that the Caucasian employees had more experience than she did, or that they were performing the work for which they received their promotions prior to receiving them. Consequently, plaintiff cannot prove that the promoted

8

employees had similar or lesser qualifications than she. Accordingly, her claim would fail even if she had applied for the positions and been rejected. See id.

Because plaintiff has failed to establish a prima facie case, the court need not address the legitimacy of defendant's decision to promote two Caucasian employees, and not plaintiff, any further than it already has. Defendant's motion as to Count I is granted.[5]

### B. Count II: Termination

Plaintiff can establish a prima facie case of employment discrimination based on race under the indirect method of proof by showing: "(1) she is a member of the protected class; (2) she met her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably." Naficy, 697 F.3d at 511. Plaintiff cannot establish a prima facie case of discrimination, again, for at least two reasons.

First, plaintiff cannot show that she was meeting defendant's legitimate expectations. When determining whether this element is satisfied, "[t]he proper inquiry mandates looking at [plaintiff's] job performance through the eyes of her supervisors at the time of her [ ] termination." Gates v. Caterpillar, 513 F.3d 680, 689 (7th Cir. 2008) (citing Peele v. Country Mut. Ins. Co., 288 F.3d 319, 329 (7th Cir. 2002) ("In most cases, when a district court evaluates the question of whether an employee was meeting an employer's legitimate employment expectations, the issue is not the employee's past performance but whether the employee was performing well at the time.") (internal quotation marks omitted)). An employee who receives poor evaluations is not meeting

---

[5] Defendants also argue that plaintiff failed to exhaust administrative remedies as to one of the promotions on which she relies in Count I. Because the court finds that plaintiff's claim fails, it will not address this argument.

her employer's legitimate expectations. Squibb v. Mem'l Med. Ctr., 497 F.3d 775, 788 (7th Cir. 2007).

The record shows that plaintiff was counseled numerous times throughout 2015 and 2016 regarding her need to improve her interpersonal skills, told that her conduct violated defendant's Values and Guide to Ethical Conduct, and warned that she was to conduct herself in a professional manner and handle disagreements respectfully, or face further discipline. Plaintiff does not dispute either that she was counseled, or the underlying communications about which she was counseled. Instead, plaintiff argues that her communication style was merely direct, not disrespectful or argumentative, or that her communications were justified in context. It is for these reasons, plaintiff claims, that she refused to sign negative performance evaluations and, admittedly, refused to "blanket change" her communication style, despite repeatedly being asked to, and her own awareness that her communication style was not well received by some of her colleagues. The court has no reason to doubt that these beliefs were truly held by plaintiff, but it must view plaintiff's behavior through her employer's eyes, not her own. Gates, 513 F.3d at 689.

Additionally, plaintiff admits to experiencing an attitude shift, which caused her to view her work interactions through a negative, pessimistic filter that affected her interactions with colleagues shortly before her negative performance appraisals and counseling regarding her attitude and communication style began. Given this admission, coupled with several undisputed examples of plaintiff being asked, and finally warned, to change her communication style, plaintiff was not meeting defendant's legitimate expectations. See Vasquez v. FIserv CIR, Inc., 1995 WL 431249, at *8 (N.D. Ill. July 14, 1995) ("It is axiomatic that an employer may legitimately expect an employee to act professionally, with integrity, and not insubordinately."). That plaintiff's job performance was otherwise acceptable does not mean that she was meeting defendant's legitimate

expectations when her professional conduct was not. Id. Plaintiff has failed to establish the second element of her discrimination claim.

The second flaw in plaintiff's claim is that she has failed to identify similarly situated employees outside of her protected class that were treated more favorably. To be similarly situated, plaintiff's comparators need not be identical, but they should have: "(1) dealt with the same supervisor"; (2) been "subject to the same standards"; and "(3) engaged in similar conduct of comparable seriousness." Coleman v. Donahoe, 667 F.3d 835, 852 (7th Cir. 2012) (citing Gates, 513 F.3d at 690). Plaintiff highlights a number of isolated incidents that she describes as misconduct by Caucasian employees working in various departments. Plaintiff does not claim that these employees were not disciplined. At most, she claims that they were not terminated. Importantly, she does not claim that any of these Caucasian employees engaged in repeated misconduct, were counseled regarding their misconduct, refused to alter their conduct after being warned that they would be disciplined if they did not, were issued PIPs in which they refused to participate, and were not terminated. Plaintiff has failed to establish the fourth element of her discrimination claim.

Plaintiff does not address these deficiencies, and instead argues that pretext can be inferred from a number of defendant's actions. These arguments presume that a prima facie case has been established when one has not. Even assuming plaintiff had established a prima facie discrimination claim, she cannot show that defendant's reason for firing her - that she refused to participate in the PIP - was pretextual. To do so, plaintiff "must present evidence suggesting that [defendant] is dissembling." Coleman, 667 F.3d at 852 (internal quotation marks omitted). "The question is not whether [defendant]'s reason was inaccurate or unfair, but whether the employer honestly believed the reasons it has offered to explain the discharge." Id. (internal

quotation marks omitted). "It is not the court's concern that [defendant] may be wrong about [plaintiff]'s performance, or may be too hard on [plaintiff]. Rather the only question is whether [defendant]'s proffered reason was pretextual, meaning that it was a lie." Id. (internal quotation marks omitted). "To meet this burden, [plaintiff] must identify such weaknesses, implausibilities, inconsistencies, or contradictions in [defendant]'s asserted reason that a reasonable person would find it unworthy of credence." Id. (internal quotation marks and alterations omitted). Plaintiff fails to carry this burden.

In her attempt to show pretext, plaintiff quibbles with a number of defendant's actions. Plaintiff first relies on the "in role" promotions given to her Caucasian colleagues as evidence of pretext, but defendant's decision to promote plaintiff's colleagues has no bearing on whether plaintiff agreed to participate in the PIP, which is why she was fired. Plaintiff claims that pretext can be inferred because defendant departed from its job posting policy when it promoted the Caucasian employees. As discussed above, the record shows that defendant did not depart from that policy, and, even if it had, such departure would provide no evidence that defendant did not genuinely believe that plaintiff's conduct was problematic and in need of improvement, as outlined in the PIP in which plaintiff refused to participate.

Plaintiff also argues that pretext can be inferred from the fact that her performance appraisals were issued "late," which is another departure from company policies. Plaintiff's only evidence of this, however, is that she did not receive her performance appraisals in the exact timeline laid out in defendant's human resource guidelines. She provides no evidence that other employees received their performance appraisals according to those guidelines, or any evidence that would allow a reasonable jury to infer that the timing of the performance evaluations was unique to plaintiff or pretextual in any way.

Next, plaintiff points to an email between Bishara and Fitzpatrick regarding plaintiff's return to her SHRG role, on which she was inadvertently included. In that email Fitzpatrick instructed Bishara to transition plaintiff back into her SHRG role, as she had requested, and "load her up with everything that needs to be accomplished." According to plaintiff, this is evidence of pretext because it was an attempt to set her up for termination. Importantly, plaintiff was not terminated for her inability to complete assigned work. Rather, the record makes clear that plaintiff's performance was at least satisfactory in every way other than her interpersonal skills. In fact, plaintiff makes much of the many positive comments included in her performance appraisals and attempts to argue that they are evidence of pretext. The court disagrees. If anything, the many glowing remarks made by Kieres, the very same supervisor that plaintiff accuses of discrimination, defeat any inference that plaintiff was set up for failure when she returned to her SHRG role.

Plaintiff also claims that, amidst the positive remarks in her performance appraisals, Kieres created her own narrative as to plaintiff's problematic communication style. This claim is belied by the record. Plaintiff admits to the many written examples that underlie defendant's warnings to plaintiff that her communication style was disrespectful and argumentative. In fact, plaintiff admits that some of those exchanges could be construed as "heated" or interpreted as combative. Not only was plaintiff warned repeatedly that this was so, but she also admits that her communication style was not always well received and that she refused to "blanket change" her communication style in response to defendant's warnings. That plaintiff disagrees with defendant's characterization of her communication style does not transform its reason for issuing the PIP into a lie. This is especially so considering plaintiff's acknowledgment that her "attitude shift" affected her communications with her colleagues, which she viewed through a negative,

13

pessimistic filter. Given these facts, the court cannot reasonably infer that defendant's explanation for why it issued plaintiff a PIP is unworthy of credence.

Finally, plaintiff submits statistics to argue that defendant's "statistical racial profile" infers pretext. Importantly, plaintiff does not submit statistics concerning defendant's discipline or termination of any of its employees. Instead, she submits statistics regarding the racial make-up of Harvey, Illinois, where defendant is located, and compares them to the racial make-up of defendant's employees. It is unclear to the court how these statistics support plaintiff's argument that her termination was pretextual. According to plaintiff, discrimination can be inferred from the fact that the general Harvey population is 75.8% African-American, while defendant's employee population is only 31.7% African-American. Assuming these statistics are accurate, they do not support an inference that plaintiff was fired because she is African-American. Plaintiff was African-American when she applied for the job, when she was hired, and when she was promoted to the project management position. Plaintiff was not terminated until after she refused to perform assigned tasks, experienced an attitude shift, was given repeated warnings to alter her communication style, and refused to participate in her PIP. Racial statistics showing that the racial make-up of defendant's employee population is more Caucasian than Harvey's population do nothing to allow a reasonable jury to infer that defendant's decision to terminate plaintiff was racially motivated.

Defendant has stated a legitimate, nondiscriminatory reason for terminating plaintiff, and plaintiff has failed to offer sufficient evidence of pretext. Whether defendant "may have been hasty or otherwise unwise in its discipline and subsequent termination of [plaintiff] is not for this Court to determine: it is not the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee." Gates, 513 F.3d at 691 (internal

quotation marks omitted). Indeed, "the only question is whether [defendant]'s proffered reason was pretextual, meaning that it was a lie." Id. (internal quotation marks omitted). "Because this Court does not—and will not—sit as 'super-personnel' to question the wisdom or business judgment of employers, this inquiry ends here, with [plaintiff's] inability to sustain her burden." Id. at 689 (internal citation omitted). Defendant's motion is granted as to Count II.

### C. Count III: Retaliation

To establish a retaliation claim, plaintiff must "offer evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." Baines v. Walgreen Co., 863 F.3d 656, 661 (7th Cir. 2017). Plaintiff has satisfied the first two elements: (1) she filed an EEOC charge; and (2) she was terminated. See id. at 661 ("Filing an EEOC charge is a protected activity."); see also Chaudhry v. Nucor Steel-Indiana, 546 F.3d 832, 838 (7th Cir. 2008) (A materially adverse employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.") (internal quotation marks omitted). The question, then, is whether plaintiff has shown a causal connection between the two.

"A plaintiff demonstrates a causal connection by showing that the defendant would not have taken the adverse action but for her protected activity." Baines, 863 F.3d at 661 (internal quotation marks and alterations omitted). Plaintiff need not show "an admission by the employer of unlawful animus," and can instead "supply the causal link through circumstantial evidence from which a jury may infer intentional discrimination." Id. "If a plaintiff can assemble from various

scraps of circumstantial evidence enough to allow the trier of fact to conclude that it is more likely than not that discrimination lay behind the adverse action, then summary judgment for the defendant is not appropriate." Id. at 661–62 (internal quotation marks and alterations omitted).

As an initial matter, the only adverse action plaintiff suffered was being terminated. See Cole v. Illinois, 562 F.3d 812, 816–17 (7th Cir. 2009) (giving negative performance evaluations and imposing a performance improvement plan do not constitute materially adverse actions). Accordingly, plaintiff must show a causal connection between her termination and her protected activity. Defendant argues that plaintiff cannot do so because plaintiff's termination is too remote in time from her protected activity. Plaintiff asks the court to infer that defendant began to build its case against her after she "stood her ground" by refusing to perform SHRG duties in addition to her project management duties without additional compensation. Even if plaintiff submitted evidence to allow the court to draw such a conclusion, and she has not, it would not support her claim that she was retaliated against for protected activity.

Plaintiff filed her first charge of discrimination with the EEOC on September 25, 2015, filed this lawsuit on July 7, 2016, and was terminated November 18, 2016. Plaintiff's first negative performance appraisal, issued March 10, 2015, noted that plaintiff had become disengaged, her behavior had declined sharply, and she was perceived as disrespectful and argumentative. Nearly fourteen months elapsed between plaintiff filing her first EEOC charge and being terminated. As discussed in detail above, plaintiff was repeatedly counseled regarding her communication style, and warned that she would be disciplined if it did not improve, throughout that time. Consequently, even if plaintiff's termination were close enough in time to her protected activity for the court to deem it suspicious, "suspicious timing alone rarely is sufficient to create a triable issue, and on a motion for summary judgment mere temporal

16

proximity is not enough to establish a genuine issue of material fact." Cole, 562 F.3d at 816 (internal quotation marks and alterations omitted).

Ultimately, plaintiff points only to her disagreement with how others perceived her communication style to support her argument that she was terminated in retaliation for engaging in protected activity. Plaintiff does not, however, dispute the communications for which she was counseled, or even that such communications could be viewed as problematic. In short, the record, even construed in the light most favorable to plaintiff, does not support her retaliation claim. Plaintiff has not submitted any evidence that would allow a reasonable jury to infer that she was terminated for any reason other than refusing to participate in the PIP. Accordingly, her retaliation claim fails and defendant's motion is granted as to Count III.

## **CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment (Doc. 65) is granted, terminating the case.

**ENTER:** **April 16, 2018**

_____
**Robert W. Gettleman**
**United States District Judge**